Bryan Hurlbutt (*pro hac vice pending*) (Idaho State Bar # 8501)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024 x206
bhurlbutt@advocateswest.org

Miles Johnson (WSBA No. 50741)
COLUMBIA RIVERKEEPER
111 Third St.
Hood River, OR 97031
(541) 490-0487
miles@columbiariverkeeper.org

Richard A. Smith (WSBA No. 21788)
SMITH & LOWNEY, PLLC
2317 East John St.
Seattle WA 98112
(206) 860-2883
rasmithwa@igc.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLUMBIA RIVERKEEPER; IDAHO RIVERS UNITED; SNAKE RIVER WATERKEEPER; PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; and THE INSTITUTE FOR FISHERIES RESOURCES<br><br>  Plaintiffs,<br><br>          v.<br><br>SCOTT PRUITT, in his official capacity as Administrator of the U.S. Environmental Protection Agency; and the U.S. ENVIRONMENTAL PROTECTION AGENCY<br><br>  Defendants. | No. 2:17-cv-289<br><br>**COMPLAINT** |

COMPLAINT – 1

## I.     INTRODUCTION

1. Plaintiffs bring this suit to compel Defendants, collectively the U.S. Environmental Protection Agency ("EPA"), to issue a pollution budget, called a total maximum daily load ("TMDL"), for temperature pollution in the Columbia and Snake Rivers in Oregon and Washington.

2. For many years, summer water temperatures in the Columbia and Snake Rivers have exceeded state water quality standards, harming salmon and steelhead, and triggering the Clean Water Act requirement to issue a TMDL. EPA began preparing the TMDL in 2000 and released a draft TMDL in 2003, which identified dams on the Columbia and Snake Rivers as the primary contributors to high water temperatures. But EPA abandoned the TMDL process shortly after releasing the draft and never issued a final TMDL.

3. Meanwhile, high water temperatures persist and continue to exceed state water quality standards and harm imperiled salmon and steelhead. In summer 2015, roughly 250,000 adult sockeye salmon died in the Columbia and Snake Rivers because warm water prevented them from successfully migrating upstream.

4. Plaintiffs seek declaratory judgment that EPA violated its mandatory duty under Section 303 of the Clean Water Act ("CWA"), 33 U.S.C. § 1313(d)(2), and has committed an unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), by failing to issue a temperature TMDL for the Columbia and Snake rivers in Oregon and Washington. Plaintiffs also seek injunctive relief ordering EPA to promptly prepare a temperature TMDL. Finally, Plaintiffs request an award of reasonable litigation costs and fees and any other relief they may request or this Court may deem appropriate.

COMPLAINT – 2

## II. JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 702–03 (Administrative Procedure Act), and 33 U.S.C. § 1365(a)(2) (Clean Water Act). The relief requested herein is authorized by 33 U.S.C. § 1365(a), and by 5 U.S.C. §§ 551(13) and 706(1).

6. In accordance with the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), Plaintiffs notified EPA of its violations of the CWA and of Plaintiffs' intent to sue under the CWA by letter dated and postmarked August 15, 2016 ("Notice Letter"). At the time of the filing of this Complaint, more than sixty (60) days have passed since the Notice Letter was issued.

7. Venue is appropriate in the Western District of Washington under 28 U.S.C. § 1391(e)(1), because Defendant EPA has offices in the Western District of Washington, portions of the Columbia River lie in the Western District of Washington, and a substantial part of the events and omissions alleged herein occurred in the Western District of Washington.

## III. PARTIES

8. Plaintiff COLUMBIA RIVERKEEPER is suing on behalf of itself and its more than 12,000 members. Columbia Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Washington. Columbia Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Columbia Riverkeeper implements scientific, educational, and legal programs aimed at protecting water quality and habitat in the Columbia River Basin. This lawsuit is part of Columbia Riverkeeper's effort to improve water quality in the Columbia River for purposes including salmon and steelhead recovery and subsistence, recreational, and commercial fishing.

COMPLAINT – 3

ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024

9. Plaintiff IDAHO RIVERS UNITED is suing on behalf of itself and its 3,500 members. Idaho Rivers United is a 501(c)(3) non-profit corporation registered in the State of Idaho. Idaho Rivers United's mission is to protect and restore the rivers of Idaho. To this end, Idaho Rivers United works to safeguard Idaho's imperiled wild steelhead and salmon, protect and enhance stream flows, improve water quality, and defend and promote the many benefits that flow from Idaho's rivers through advocacy and outreach. This lawsuit is part of Idaho Rivers United's effort to keep Idaho's rivers flowing and to restore Idaho's once mighty runs of steelhead and salmon—anadromous fish born in Idaho, which migrate down the Snake and Columbia Rivers to the Pacific Ocean, and then return to Idaho to spawn and die.

10. Plaintiff SNAKE RIVER WATERKEEPER is suing on behalf of itself and its 350 members. Snake River Waterkeeper is a 501(c)(3) non-profit corporation registered in Idaho. Snake River Waterkeeper's mission is to use science and law to protect, restore, and sustain waters of the Snake River basin. Snake River Waterkeeper monitors water quality, investigates citizen concerns, and enforces environmental laws with the goal of swimmable, fishable, and drinkable water basin-wide. This lawsuit is part of Snake River Waterkeeper's efforts to improve water quality in the Snake River, increase fish habitat and natural reproduction, and restore native fish populations throughout the basin.

11. Plaintiff PACIFIC COAST FEDERATION OF FISHERMAN'S ASSOCIATIONS ("PCFFA") is 501(c)(3) non-profit corporation. PCFFA has two regional offices, including its Northwest Regional Office in Eugene, Oregon. PCFFA is the largest and most active trade association of commercial fisherman on the West Coast, representing 16 member organizations. PCFFA's members span the West Coast, from San Diego to Alaska. PCFFA is active in the halls of Congress, implementing Coast Guard safety regulations,

protecting river flows, promoting high quality seafood, stopping water pollution discharges, and opposing dam operations. PCFFA has devoted substantial resources to protecting fish from dams on the Columbia and Snake Rivers, and this lawsuit is part of PCFFA's efforts to restore and sustain fish populations throughout the Columbia River basin.

12. Plaintiff INSTITUTE FOR FISHERIES RESOURCES is a 501(c)(3) non-profit corporation headquartered in San Francisco, California. Established in 1993 by the PCFFA, Institute for Fisheries Resources carries out fishery research and conservation needs of working fishing men and women and works toward its vision of global sustainable fisheries. To this end, Institute for Fisheries Resources works on salmon protection and restoration issues, with a focus on dams, water diversions, and forestry, as well as conservation projects and advocacy throughout the Pacific Northwest and beyond.

13. Plaintiffs have standing to bring this action. Plaintiffs have many staff, members, and supporters who live, work, and recreate in and near the Columbia and Snake Rivers in Oregon and Washington, and in and near tributary streams that sustain, or historically sustained, Columbia and Snake River salmon and steelhead. Plaintiffs' staff, members, and supporters regularly use and enjoy the waters and the surrounding areas that are adversely affected by high temperature in the Columbia and Snake Rivers. They use these areas for, *inter alia*, fishing, hiking, walking, photographing, boating, and observing wildlife.

14. The environmental, health, aesthetic, recreational, and/or economic interests of Plaintiffs and their members have been, are being, and will be adversely affected by the Defendant EPA's failure to prepare a temperature TMDL. Elevated temperatures degrade water quality and jeopardize the health of fish and other aquatic life in the Columbia and Snake Rivers and their tributaries, impairing Plaintiffs' interests. As a result, Plaintiffs' members refrain from

ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024

fishing, hiking, walking, photographing, boating, and observing wildlife and other activities on the Columbia and Snake Rivers and/or enjoy those activities less. Plaintiffs' members include commercial fisherman who are harmed economically and/or face a risk of economic harm.

15. Furthermore, EPA's failure to issue the TMDL injures Plaintiffs by diverting and depleting each organization's time, resources, and effort, and by preventing Plaintiffs from obtaining and disseminating information to their members and the public and from advocating solutions to water temperature problems, impairing Plaintiffs' abilities to further their organizational missions. Protecting water quality on the Columbia and Lower Snake Rivers, and restoring their fisheries, are core parts of Plaintiffs' organizational missions. Plaintiffs have spent and continue to spend time, resources, and effort to ensure EPA issues a temperature TMDL, adheres to the Clean Water Act and its implementing regulations, and protects water quality and fisheries, and to ensure that other regulatory agencies adequately and appropriately carry out their obligations to protect water quality, including the issuance by states of National Pollutant Discharge Elimination System ("NPDES") permits authorizing discharges to these waters that comply with wasteload allocations established in TMDLs.

16. These injuries are fairly traceable to the violations and are redressable by the Court. EPA's issuance of a TMDL for the Columbia and Snake Rivers will help achieve compliance with state temperature standards in these rivers, which are designed to protect aquatic species including salmon and steelhead. Congress and EPA have determined that establishing TMDLs for impaired waterways is an effective tool for achieving water quality standards. Without a TMDL, there is no EPA-approved Clean Water Act pollution budget in place that identifies temperature pollution sources, specifies reductions necessary to bring about

COMPLAINT – 6

compliance with water quality standards, and initiates the Clean Water Act process for achieving such compliance.

17. At all relevant times, Plaintiffs were and are "persons" as the term is defined by the Clean Water Act, 33 U.S.C. § 1362(5).

18. Defendant SCOTT PRUITT is sued in his official capacity as Administrator of the U.S. Environmental Protection Agency. As Administrator, Mr. Pruitt is in the highest position at the agency, with the authority and responsibility to implement the Clean Water Act.

19. Defendant U.S. ENVIRONMENTAL PROTECTION AGENCY is an agency of the United States charged with implementing and ensuring compliance with the Clean Water Act, among other federal environmental statutes. EPA is divided into geographic regions. EPA Region 10 oversees EPA's operations in Washington, Oregon, Idaho, and Alaska. EPA Region 10 is based in Seattle, Washington.

### IV.   LEGAL BACKGROUND

**The Clean Water Act**

20. In 1972, Congress passed the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters . . . ." 33 U.S.C. § 1251(a). To meet these goals, states establish water quality standards that protect specific uses of waterways. 33 U.S.C. § 1313(a)–(c).

21. The Clean Water Act requires states to list waterways that do not meet applicable water quality standards and, therefore, where uses are not being protected. 33 U.S.C. § 1313(d)(1). This list is often referred to as a state's "303(d) list" or list of "impaired waters."

22. When a state lists a waterway as impaired, the Clean Water Act requires the State and EPA to quickly prepare a plan to fix the water quality problem. 33 U.S.C. § 1313(d)(1)(C);

COMPLAINT – 7

40 C.F.R. § 130.7(c)(1). That plan is called a total maximum daily load or TMDL. *Id.* A TMDL identifies the sources of pollution and works like a pollution budget, restricting each source of pollution to the "level necessary to [meet] the applicable water quality standards with seasonal variations and a margin of safety." *Id.*

23. For each impaired waterway, the state must submit a TMDL to EPA for approval or disapproval. 33 U.S.C. § 1313(d)(2). States were required to submit their first lists of impaired waters and TMDLs within 180 days and are required to continue making submissions from time to time. *Id.* Upon receiving a TMDL from a state, EPA must decide within 30 days whether the TMDL is adequate. *Id.*; 40 C.F.R. § 130.7(d)(2). If the state's TMDL is not adequate, EPA must disapprove the TMDL and must write a substitute TMDL for the state within 30 days of the disapproval. *Id.*

24. Under the Clean Water Act's "constructive submission" doctrine, when a state clearly and unambiguously decides not to submit a required TMDL, courts proceed as though the state had submitted an inadequate TMDL, triggering EPA's nondiscretionary duty to issue a substitute TMDL. *See Sierra Club v. McLerran*, No. 11-cv-1759-BJR, 2015 WL 1188522 (W.D. Wash. Mar. 16, 2015); *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 883 (9th Cir. 2002); *Alaska Ctr. for the Env't v. Reilly*, 762 F. Supp. 142 (W.D. Wash. 1991).

**The Administrative Procedure Act**

25. Under the Administrative Procedure Act, a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action includes an agency's failure to act. 5 U.S.C. § 551(13).

COMPLAINT – 8

ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024

26. The APA also empowers a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Courts generally use the following factors to consider an unreasonable delay claim: (1) the length of the delay; (2) the reasonableness of the delay in the context of the statute authorizing agency action; (3) the consequences of the delay; and (4) any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

## V. FACTS

**The Columbia and Snake Rivers and Their Imperiled Salmon and Steelhead Runs**

27. The Columbia River is the fourth largest river in North America, flowing more than 1,200 miles from its source in the Canadian Rockies to the Pacific Ocean. The Columbia River basin once had the largest salmon populations in the world, but hydroelectric dams, habitat degradation, water quality problems, and other factors have caused significant declines.

28. The Snake River is the Columbia's largest tributary and historically sustained at least a third of the salmon runs in the Columbia River basin. The Snake River forms in Wyoming and flows over 1,000 miles across southern Idaho, along the Idaho-Oregon border, and through eastern Washington, to join the Columbia near Kennewick, Washington. Numerous dams impede the flow of the Snake River, including the four Lower Snake Dams, which are located in the State of Washington.

29. Every year, salmon and steelhead travel up and down the Columbia and Snake Rivers. After hatching in fresh water, juveniles migrate downstream to the Pacific Ocean where they feed and grow. After a few years, they return as adults to the Columbia River and its tributaries to spawn.

30. When Lewis and Clark traversed the Northwest Territory, about 30 million adult salmon returned to the Columbia-Snake river basin each year, making it the most productive salmon river system in the world. Today, runs are often less than ten percent of the historic population.

31. Due to population declines, 13 species or populations of Columbia and Snake River salmon and steelhead have been listed for protection under the Endangered Species Act. Other species and populations have already gone extinct.

32. As one example, endangered Snake River sockeye salmon were historically abundant in several lake systems in Idaho and Oregon. But by the 1990s, a variety of factors led to the demise of all Snake River sockeye salmon except those returning to Redfish Lake in central Idaho. Even at Redfish Lake, the sockeye population had dwindled to fewer than ten fish per year, including some years when no fish returned. Snake River sockeye salmon remain in a perilous state, due in part to high water temperatures—which are expected to worsen due to continuing climate change.

**High Temperatures Impair the Columbia and Snake Rivers and Harm Fish**

33. Water temperatures above 20°C negatively affect salmon and steelhead by delaying migration, depleting energy resources, increasing susceptibility to diseases, and reducing survival. Many of these negative effects have been observed at temperatures less than the 20°C.

34. EPA, Washington, and Oregon have long acknowledged that high summertime water temperatures in the Columbia and Lower Snake Rivers harm salmon and steelhead. Accordingly, Washington and Oregon established EPA-approved temperature water quality

criteria to protect salmon and steelhead spawning, rearing, and migration in the Columbia and Lower Snake Rivers.

35. Multiple segments of the Columbia and Lower Snake Rivers are on Washington's and Oregon's 303(d) lists because the states determined that these river segments do not meet the temperature water quality criteria.

36. During 2015, high summer water temperatures in the Columbia and Snake Rivers proved disastrous for salmon. An estimated 250,000 adult sockeye salmon died while migrating up the Columbia and Snake Rivers due to the effects of encountering warm water exceeding 20°C. For endangered Snake River sockeye, the result was catastrophic: 96 percent of adult sockeye returning to the Snake River perished before passing the four Lower Snake Dams.

37. After the 2015 temperature disaster, the National Marine Fisheries Service ("NMFS") proposed some limited measures intended to address lethal water temperatures. In response to NMFS' modest proposals, EPA called for broader strategies to "reduc[e] the overall river temperatures during the latter part of June and July to improve adult sockeye survival through the Lower Columbia and Lower Snake Rivers." In addition to preventing massive sockeye salmon die-offs, EPA concluded that "maintaining 20°C or below temperatures in the Lower Columbia and Snake Rivers during the late June and July timeframe would be beneficial for adult summer Chinook and steelhead survival . . . and would also be beneficial to juvenile salmon and steelhead out migrating during this period." EPA also noted "[t]he need to lower water temperatures becomes more critical as the Pacific Northwest Region continues to address and mitigate climate change."

COMPLAINT – 11

**Sixteen Years Ago, EPA Agreed to Write a Temperature TMDL**

38. On or about October 16, 2000, EPA, Washington, and Oregon entered into an agreement coordinating the preparation of TMDLs to address temperature pollution impairing the Columbia and Snake Rivers. The agreement was called: "Memorandum of Agreement: Columbia/Snake Rivers Total Maximum Daily Load for Total Dissolved Gas and Temperature."

39. In the Memorandum of Agreement, EPA and the states agreed that EPA would lead the creation of a temperature TMDL. In 2001, Oregon and Washington requested by letters that EPA create and issue the temperature TMDL in Oregon and Washington.

40. The TMDL would address temperature pollution on the mainstem Columbia River from its mouth upstream to the Canadian border, and on the mainstem Snake River from its confluence with the Columbia upstream to river mile 188.

**EPA Released a Draft TMDL in 2003**

41. After coordination and input from state, federal, and tribal agencies, EPA produced the "July 2003 Preliminary Draft" of the Columbia/Snake Rivers Temperature TMDL.

42. The July 2003 Preliminary Draft explained that the TMDL's purpose was to quantify the temperature problems in the Columbia and Lower Snake Rivers and determine the level of improvement needed to meet water quality standards.

43. The July 2003 Preliminary Draft determined that dams on the Columbia and Lower Snake Rivers are responsible for the high water temperatures and exceedances of water quality standards. For example, EPA concluded that Grand Coulee dam on the Columbia River causes temperature increases as high as 6.23°C, and that the four dams on the Lower Snake River can each raise temperatures by 1.2°C to 2.08°C.

44. EPA determined that temperature pollution from inflowing tributaries and from point sources like factories has a negligible impact on average river temperatures. EPA then determined what temperature reductions would need to be achieved at each dam in order to comply with water quality standards.

45. As stated in the July 2003 Preliminary Draft, EPA intended to release another draft TMDL for public comment and then issue the final TMDL shortly thereafter. Next, Oregon and Washington would issue implementation plans designed to identify and implement feasible management actions for improving temperature.

**EPA Failed to Issue the TMDL, and Temperature Problems Persist**

46. EPA has never issued a final temperature TMDL for the Columbia and Lower Snake Rivers.

47. Shortly after the July 2003 Preliminary Draft became public, EPA abandoned the temperature TMDL, due in part to pressure from other federal agencies responsible for managing dams on the Columbia and Lower Snake Rivers. However, temperature problems persist and the Columbia and Lower Snake Rivers still fail to meet temperature water quality standards.

48. Oregon and Washington have indicated that they will not issue temperature TMDLs. Both states are waiting for EPA to issue the TMDL.

## VI.   FIRST CAUSE OF ACTION

49. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

50. By entering into the Memorandum of Agreement in 2000, requesting in 2001 that EPA establish and issue the TMDL, and by other acts and omissions, the states of Oregon and Washington clearly and unambiguously expressed their intent not to prepare or submit to EPA temperature TMDLs for the Columbia and Lower Snake Rivers . These actions represent Clean

COMPLAINT – 13

ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024

Water Act constructive submissions, triggering EPA's mandatory duties to (1) disapprove Oregon and Washington's constructive submissions and (2) prepare a TMDL in 30 days. 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(2). To date, EPA has failed to perform these duties.

51. Without the Court declaring EPA to be in violation of the Clean Water Act, and without the Court imposing a deadline for EPA to issue a temperature TMDL, EPA is likely to continue its longstanding and ongoing failure to address temperature pollution in the Columbia and Snake Rivers, further injuring Plaintiffs, their members, and others.

## VII. SECOND CAUSE OF ACTION

52. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

53. By failing to issue a temperature TMDL for the Columbia and Lower Snake Rivers, EPA has also committed unreasonable delay under the Administrative Procedure Act. The APA requires agencies to address the matters presented to them within a reasonable time. 5 U.S.C. §§ 551(13); 706(1).

54. In 2000, EPA entered into an agreement with Oregon and Washington to prepare the temperature TMDL. In July 2003, EPA released a draft of the TMDL. But EPA has not issued a final TMDL. This 13-and-a-half-year delay in issuing the final TMDL is not reasonable in light of the significant amount of work EPA already completed. Nor is EPA's delay reasonable in light of the timelines set forth in the Clean Water Act and its implementing regulations, which call for swift action to issue TMDLs within 30 days. 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(2).

55. Furthermore, the consequences of the delay have been severe. High temperatures on the Columbia and Snake Rivers have harmed and continue to harm endangered and threatened

COMPLAINT – 14

ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024

fish species, and other aquatic resources, and EPA's delay has set back the Clean Water Act's TMDL process for achieving compliance with temperature standards by many years.

## VIII. RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

A. Issue a declaratory judgment that EPA has violated and continues to violate Section 303(d) of the Clean Water Act, 33 U.S.C. §§ 1313(d), for failing to prepare and issue a final temperature TMDL for the Columbia and Lower Snake Rivers, and/or that EPA has committed unreasonable delay under the Administrative Procedure Act, 5 U.S.C. § 706(1);

B. Order EPA to promptly issue a lawful temperature TMDL for the Columbia and Lower Snake Rives on a firm schedule to be set by the Court, and in any event no later than one year from this date;

C. Grant such other preliminary and/or permanent injunctive relief as Plaintiffs may request during the pendency of this case;

D. Award Plaintiffs their litigation expenses, including reasonable attorney and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the Equal Access to Justice Act, 28 U.S.C. § 2412, and/or all other applicable authorities; and

E. Grant such further and additional other relief as this Court deems just and proper in order to remedy Defendant's violations of law and protect the public interest.

////

////

////

////

COMPLAINT – 15

1  RESPECTFULLY SUBMITTED this 23th day of February, 2017.

By: s/ Bryan Hurlbutt

Bryan Hurlbutt (*pro hac vice pending*) (Idaho State Bar # 8501)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024 x206
bhurlbutt@advocateswest.org
*Attorney for Plaintiffs*


s/ Miles Johnson

Miles Johnson (WSBA No. 50741)
COLUMBIA RIVERKEEPER
111 Third St.
Hood River, OR 97031
(541) 490-0487
miles@columbiariverkeeper.org
*Attorney for Columbia Riverkeeper*